Filed 9/5/13  P. v. Oliva CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HECTOR ORLANDO OLIVA,<br><br>    Defendant and Appellant. | B244050<br><br>(Los Angeles County<br>Super. Ct. No. YA077421) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Eric C. Taylor, Judge.  Affirmed.

Kiran Nair, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed by the Los Angeles District Attorney, defendant and appellant Hector Orlando Oliva was charged with possession for sale of cocaine base (count I; Health & Saf. Code, § 11351.5), possession for sale of a controlled substance (count II; Health & Saf. Code, § 11351), and possession for sale of a controlled substance (count III; Health & Saf. Code, § 11378).

On November 8, 2010, appellant waived his rights and pursuant to a plea agreement, he pleaded nolo contendere to count I. He was placed on three years of formal probation as to count I, with the condition that he serve 120 days in county jail. He was given 90 days of custody credits, which included 45 days of actual custody and 45 days of good time/work time. The trial court further ordered him to pay a $40 court security assessment (Pen. Code, § 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $150 drug program fee (Health & Saf. Code, § 11372.7), a $200 restitution fine (Pen. Code, § 1202.4, subd. (b)), and a $200 suspended parole revocation fine (Pen. Code, § 1202.46). Counts II and III were dismissed pursuant to the plea agreement.

On October 17, 2011, appellant filed a motion to vacate his plea. On November 1, 2011, appellant filed a subsequent motion to vacate his plea. On November 10, 2011, appellant's motions were denied.

On June 22, 2012, appellant filed a motion to dismiss his conviction, pursuant to Penal Code section 1385. That motion was denied as well.

Appellant then filed a notice of appeal and a request for a certificate of probable cause. On August 27, 2012, the request for a certificate of probable cause was denied.

On appeal, appellant argues that the trial court's denial of his postconviction motion made pursuant to Penal Code section 1385 was erroneous. Specifically, he contends that the trial court should have granted his request to testify at the postconviction motion hearing regarding what advice, if any, he received from his trial counsel about the immigration consequences of his plea.

We find no abuse of discretion. Accordingly, we affirm.

**PROCEDURAL BACKGROUND**

*Appellant's Plea Agreement*

On November 8, 2010, appellant withdrew his not guilty plea and entered into a negotiated plea agreement. At the hearing on his change of plea, the prosecuting attorney advised appellant: "'Do you understand, sir, that if you are not a citizen of the United States that you would be deported, denied admission of citizenship into the United States?'" Appellant replied, "'Yes.'" The prosecuting attorney then "went on to ask [appellant whether he] 'had an opportunity to discuss the immigration issues or consequences with [his] attorney.'" Again, he responded, "'Yes.'"

At some point during the plea proceedings, the trial court asked appellant's plea counsel, Lowynn Young, whether she had discussed the immigration consequences of his plea with appellant. Ms. Young stated: "'Yes, I have, your Honor. He is a naturalized citizen but I've advised him that this felony could affect his naturalization status.'"

*Appellant's Motions to Vacate His Plea*

On October 17, 2011, appellant filed a motion to vacate his plea. Attached to his motion was a declaration, dated October 8, 2011, in which appellant declared that his attorney told him that his plea would not affect his immigration status. Appellant further averred that the drugs he possessed had belonged to an unidentified friend that appellant had allowed to stay with him and that he knew nothing about them. He additionally stated that he told his plea counsel that he would take the matter to trial, but his attorney told him that "it was a waste of time and it would drag the case out," and that he would "only get sentenced to 120 days and [that he] would only actually have to serve about 10% of that time." He was "assured that drug possession would not hurt [his] immigration status because [he] was legal." Moreover, appellant declared that during the plea proceeding, the trial court "read [him] warnings and one of the warnings was about immigration consequences. When [he] heard that[, he] whispered to [his] attorney that [he has] a green card and asked again if [he] was going to have trouble. [He] was very concerned. [Ms. Young] told [him] that [he] would be fine because [he] was legal."

Finally, appellant stated that had he known that his plea would result in deportation, he never would have entered into the plea agreement.

On November 1, 2011, appellant filed a subsequent motion to vacate his plea. Attached to this second motion was appellant's October 8, 2011, declaration.

*Hearing on Appellant's Motions to Vacate*

The trial court entertained oral argument on appellant's motions on November 10, 2011. At the hearing, the prosecuting attorney testified that she advised appellant of the immigration consequences of his plea and that appellant stated that he understood. She also confirmed that, according to the reporter's transcript, Ms. Young had advised appellant that his felony could affect his naturalization status.[1]

Ms. Young also testified at the November 10, 2011, hearing. She stated that she advised appellant that "whatever his citizenship status was . . . he would face deportation consequences." She further stated that she informed appellant "prior to his plea of no contest that [his plea to a controlled substances for sale charge] was still something that could impact his immigration consequences." Appellant appeared to understand Ms. Young's advice and, in spite of the risk, was freely choosing to take the settlement. Ms. Young stated that she never told appellant that he would never be deported; she never promised him that he would not face any kind of serious immigration consequences.

Finally, Ms. Young testified that there were notes from the prior public defender in the case file. Those notes indicated that the prior public defender "'explained immigration problem with county jail [to appellant], will be deported if takes jail time. [Appellant] advised not to take the offer.'"

Appellant did not testify at the hearing.

After oral argument, the trial court denied appellant's motions.

---

[1] There was some confusion as to appellant's immigration status. Ms. Young testified that she believed that appellant told her that he was a naturalized citizen. But, appellant is not a naturalized citizen; he is a legal permanent resident.

*Appellant's Motion to Dismiss His Conviction*

On June 22, 2012, appellant filed a motion to dismiss his conviction, pursuant to Penal Code section 1385. Attached to his motion was a declaration from appellant, in which he declared that at the time of his plea, he was a legal permanent resident; that he never told Ms. Young that he was a United States citizen; that Ms. Young informed him that since he had legal status, he would not have any trouble with immigration; that he would not have pleaded guilty had he known that it would result in deportation; that had he been properly advised, he would have asked for other options; and that he would have preferred trial where he had a chance at an acquittal.

*Hearing on Appellant's Motion*

On July 23, 2012, the trial court held a hearing on appellant's motion. At that time, appellant sought an evidentiary hearing to permit him to testify as to his "true knowledge or ignorance of the immigration consequences" of his plea.

The trial court denied appellant's motion and his request for an evidentiary hearing, stating: "We discussed this in chambers and, basically, the same arguments were brought up in chambers. And we did have a long—or we did have a full hearing on these issues. [¶] As sympathetic—as I stated in chambers and I will state it to you now, as sympathetic as I am to the consequences of deportation, which is apparently what will happen, I mean there really aren't any grounds for the court to grant the motion. He seemed to be fully advised on the record. According to Ms. Young's testimony, he was advised. There's an indication that his prior public defender told him the same thing that this would have deportation consequences. [¶] And it's hard for the court to get into what a person is actually thinking beyond what's said on the record. And if we started doing that with every case, we'd have a flood of cases just of pleas or convictions simply overturned depending on the consequences for the individual. [¶] It's a bad situation, but he was correctly advised apparently. The motion is denied."

**DISCUSSION**

I. *Dismissal of appellant's appeal*

The People contend that the appeal must be dismissed because (1) appellant failed to secure a certificate of probable cause, (2) the appeal is untimely, and (3) appellant failed to provide an adequate record on appeal. We decline to address any of these procedural arguments, opting instead to consider the appeal on the merits; as discussed below, we conclude that the trial court did not abuse its discretion when it denied appellant's request to testify at the hearing on his motion to vacate his plea.

II. *The trial court did not abuse its discretion in denying appellant's motion to vacate his plea*

Appellant contends that he should have been granted an evidentiary hearing to testify about his knowledge and understanding of his attorney's advice on immigration consequences. We review the trial court's order denying appellant's request to testify at his postconviction hearing for abuse of discretion. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 201 (*Zamudio*).)

We find no abuse of discretion. Appellant has made no showing that if the trial court had heard his live testimony, rather than reading and considering his declaration, it would have changed its order. And, as pointed out by the People, "that the trial court's findings were based on declarations and other written evidence does not lessen the deference due those findings." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711, fn. 3.) Quite simply, a live hearing was not required. (*Zamudio*, *supra*, 23 Cal.4th at p. 201.)

6

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
     ASHMANN-GERST

We concur:

_____, P. J.
     BOREN

_____, J.
     CHAVEZ